UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Don Huizenga, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Anoka-Hennepin Education Minnesota, et al.,<br><br>Defendants. | Court File No. 20-cv-2445-NEB-ECW<br><br><br><br>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AHEM'S MOTION TO DISMISS |

## INTRODUCTION

Defendant Anoka-Hennepin Education Minnesota ("AHEM") misapplies the law related to Plaintiffs' taxpayer standing in this case and misunderstands Plaintiffs' right to not subsidize a public sector union's political advocacy. AHEM is correct that Plaintiffs do rely in part on *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448 (2018), for the existence of the right not to subsidize a public sector union's private political advocacy, but AHEM misstates the law as it relates to *Janus*' broader impact already recognized by the Eighth Circuit. Plaintiffs not only have standing to sue AHEM in this matter, but they also should prevail on their federal claims. *See* Pls.' Mem. of Law in Supp. of Their Motion for a Preliminary Injunction, Feb. 22, 2021, ECF No. 21 ("Pls.' Injunction Mem."). Consequently, the Court should deny AHEM's motion to dismiss.

1

## RELEVANT FACTS

Plaintiffs disagree with some portions of AHEM's statement of facts. First, AHEM provides conflicting characterizations of Plaintiffs' alleged injuries. Plaintiffs have alleged that they have suffered harm not only as state taxpayers, but also local taxpayers of the Defendant Anoka-Hennepin Independent School District No. 11 ("ISD 11") by payment of their property taxes to Anoka County. *Compare* Compl. ¶¶ 8-9, 13-15, 27 *with* ECF No. 14 at 4 ("they attempt to establish Article III standing solely by alleging that they are taxpayers and residents of ***Anoka County***, Minnesota, who pay 'taxes to both the State and Anoka County which are allocated to ISD 11.'"), 6 ("The Complaint here seeks to advance a generalized objection to the ***State's*** allocation of tax money . . . .") (emphases added). To be clear, Plaintiffs have alleged standing based on their payment of both state and local taxes to support ISD 11. Compl. ¶ 27 ("School receives about 70% of its budget money from state revenue[ and] 21% of its budget money from property taxes paid by district residents . . . ."); *see also* Compl. ¶¶ 8-9, 13-15, 46.

In addition, AHEM claims that Plaintiffs only seek the remedy of the return of funds by AHEM to ISD 11. ECF No. 14 at 7. However, importantly, Plaintiffs also seek an injunction against AHEM continuing its illegal practices. Compl. ¶ 56.

Some of Plaintiffs' allegations summarized in their preliminary injunction motion bear repeating here. First, AHEM has requested and continues to request that ISD 11 allow AHEM members who are teachers to take leave to engage in AHEM business, including political advocacy such as door-knocking and other political or campaign activities. Answer of Def. ISD 11, ECF No. 17, ¶¶ 12-13; *see also* Decl. of James Dickey, Feb. 22,

2

2021, Ex. 3 at JD0068 (related to the 2017 levy submitted to ISD 11 voters, former AHEM President LeMoyne Corgard publicly stated, "From phone-banking to door-knocking to literature drops, literally going out seven days a week, everybody contributed in many ways."). AHEM therefore removes teachers from work for ISD 11, and those teachers then go to work for AHEM, including political or campaign advocacy. *See id.*

At the same time, ISD 11 pays the teachers' full salaries plus benefits, and AHEM only reimburses ISD 11 at a substitute rate. Answer of Def. ISD 11, ECF No. 17, ¶ 2 (admitting paragraph 44 of the Complaint). Plaintiffs alleged this clear pocketbook disparity in the Complaint, summarized as follows:

| Full-time teacher salary (per diem) | Substitute rate (per diem) |
|---|---|
| Lowest: $227.47 | Highest: $160 |
| Highest: $495.79 | Lowest: $150 |
| **Per diem subsidy between $67.47 and $345.79** ||

*See* Compl. ¶¶ 36-40; Answer of ISD 11, ECF No. 17, ¶ 11.

This subsidy of AHEM leave by ISD 11 is an expenditure of Plaintiffs' state and local tax dollars. Again, as Plaintiffs alleged in the Complaint and ISD 11 alleged in its Answer, ISD 11 receives about 70-77% of its budget money from state revenue, 19-20% of its budget money from property taxes paid by district residents, and the remaining dollars from other local revenue, local sales and transfers, and federal money. Compl. ¶ 27; Answer of Def. ISD 11, ECF No. 17, ¶ 9; Anoka-Hennepin Schools, 2020-2021 Budget, p. 4 (chart), available at: https://drive.google.com/drive/folders/0B4W6gF1tgOkET2tTa0NxUVhKaTg (last accessed Feb. 5, 2021).

Finally, Plaintiffs summarized the relevant facts, supported by declarations, in

3

support of their motion for a preliminary injunction. Pls.' Injunction Mem., ECF No. 21, at 1-5; Decl. of Don Huizenga, Feb. 10, 2021, ECF No. 23; Decl. of Jim Bendtsen, Feb. 10, 2021, ECF No. 22; Decl. of Nancy Powell, Feb. 6, 2021, ECF No. 24. Plaintiffs incorporate the other memorandum and these documents by reference. While the Court must only look at the Complaint and those documents embraced by the pleadings in evaluating this motion to dismiss, the declarations supporting Plaintiffs' preliminary injunction motion are consistent with the Complaint and provide additional details relevant to the Plaintiffs' political views and objections to AHEM's actions, as alleged in the Complaint. *Compare* ECF Nos. 22-25 *with* Compl. ¶¶ 8, 13-15, 46.[1]

## LEGAL ARGUMENT

### I. LEGAL STANDARD FOR RULE 12 MOTIONS.

Here, AHEM acknowledges that the Court must accept Plaintiffs' allegations in the Complaint as true for purposes of this motion. ECF No. 14 at 4-5. Plaintiffs agree. In fact, Defendant ISD 11 has admitted multiple allegations in the Complaint, further supporting the Court's acceptance of these allegations as factually correct. Answer of ISD 11, ECF No. 17, ¶¶ 2, 7-18.

---

[1] While Plaintiffs believe that they easily satisfy the standing test discussed below, if the Court believes that additional allegations about Plaintiffs' objections would be important for the Court's decision as to whether it has jurisdiction, Plaintiffs recommend the Court allow the filing of an Amended Complaint similar to the procedure the Court recently invoked after oral argument on the motion to dismiss in *Halla et al. v. LikeZebra, LLC, et al.* case. ECF No. 38, June 3, 2020 (D. Minn. No. 19-cv-2097-NEB-KMM).

## II. PLAINTIFFS HAVE STANDING TO SUE AHEM AS LOCAL TAXPAYERS WHO PAY PROPERTY AND INCOME TAXES ALLOCATED TO THE ANOKA-HENNEPIN INDEPENDENT SCHOOL DISTRICT.

Plaintiffs can sue AHEM as taxpayers here. They have alleged a sufficient injury in the violation of their First Amendment right to not subsidize AHEM's political advocacy through the CBA with ISD 11, which uses their local and state taxpayer dollars. Compl. ¶¶ 8-9, 13-15, 27, 46. This is both an economic and noneconomic injury for which the federal courts are an appropriate venue. *See, e.g., Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 433-34 (1952) (economic injury in illegal spending of municipal taxpayer dollars); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982) ("In reaching this conclusion, we do not retreat from our earlier holdings that standing may be predicated on noneconomic injury.").

AHEM simply confuses the issues by conflating case law related to federal, and sometimes state, spending with local spending. AHEM's cited case law does not advance its standing argument in the proper context of a First Amendment claim based on local taxation.

### A. Plaintiffs Have Standing to Sue Defendants for First Amendment Free Speech Violations Based on Unconstitutional Expenditures of Local Tax Dollars.

AHEM's argument hinges largely on generic statements about federal tax dollar spending, and to some extent state tax spending, which it seems to conflate with local tax spending. In fact, AHEM does not appear to examine a single local taxpayer case. *See* ECF No. 14 at 5-10. However, the correct focus for Article III purposes is on the illegal spending

of local tax dollars first, and state tax dollars second, as alleged in the Complaint. Compl. ¶¶ 8-9, 13-15, 27.

To this point, the Supreme Court has directly held:

> The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate. . . . Indeed, a number of states provide for it by statute or decisional law and such causes have been entertained in federal courts.

*Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 433-34 (1952) (citing *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923)).

It is hard to imagine a more on-point statement by the Supreme Court as to whether the misuse of local[2] taxes is actionable in federal court.

The *Doremus* Court's decision was based in part on the seminal *Everson v. Board of Education of Ewing Township* case. In *Everson*, "[t]he appellant, in his capacity as a district taxpayer, filed suit in a State court challenging the right of the Board to reimburse parents of parochial school students." *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 3, (1947). The Supreme Court did not throw the appellant out of federal court and back to New Jersey because he was suing only as a district and state taxpayer. *See id.*

While these taxpayer spending cases were launched in the arena of the religion clauses of the First Amendment, there is no reason that the speech clauses should be granted lesser constitutional protection. The only federal district court that appears to have examined the application of the *Doremus* principle pursuant to the First Amendment rights

---

[2] Minnesota's state courts specifically allow taxpayer suits based on illegal expenditures of state tax dollars. *E.g., McKee v. Likins*, 261 N.W.2d 566, 570-71 (Minn. 1977).

confirmed by *Janus* held that the plaintiffs there had standing to sue as municipal taxpayers. *See O'Brien v. Village of Lincolnshire*, 354 F. Supp. 3d 911, 915-17 (N.D. Ill. 2018), *aff'd* 955 F.3d 616 (7th Cir. 2020). This is consistent with the Supreme Court's *Doremus* principle and should likewise be applied here.[3]

Simply put, when violated, the First Amendment provides grounds for a taxpayer to challenge local tax expenditures at the very least. And consistent with the *Doremus* requirement that a plaintiff alleging a constitutional violation allege a "good-faith pocketbook action," Plaintiffs here have alleged that they pay both local and state income and property taxes that are allocated to ISD 11, as Plaintiffs live within the district. Compl. ¶¶ 8-9, 13-15, 27, 46. Plaintiffs allege that a certain portion of their local property tax dollars are allocated to ISD 11. Compl. ¶¶ 13-15, 27. Plaintiffs allege that AHEM, through the CBA, is misusing these local tax dollars by subsidizing political speech with which Plaintiffs disagree. Compl. ¶ 8, 46, 51, 66. These allegations are a sharp contrast from AHEM's claim that Plaintiffs only assert a "generalized objection to the State's allocation of tax money." ECF No. 14 at 6.

Despite Plaintiffs' sufficient allegations of harm to their First Amendment rights based on AHEM's spending of their money on political advocacy, AHEM argues that it essentially can't figure out what harm Plaintiffs have alleged in the Complaint related to political advocacy. ECF No. 14 at 6 ("The Complaint does not identify any particular advocacy on the part of employees, does not describe Plaintiffs' disagreement with said

---

[3] Plaintiffs acknowledge that the *O'Brien* court dismissed on other grounds related to the merits of the First Amendment claim in that case, which Plaintiffs will address below.

advocacy, and indeed does not directly state that Plaintiffs are harmed by this disagreement. It merely alludes to disagreement with AHEM's advocacy in the most general of terms, stating, for instance, 'taxpayers cannot be forced to subsidize political advocacy with which they disagree.'").

This is not a "generous reading" of the Complaint. AHEM fails to acknowledge long-standing Supreme Court precedent that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In addition, AHEM fails to acknowledge that it was enough for the Supreme Court in *Janus* that "Janus refused to join the Union because he opposes 'many of the public policy positions that [it] advocates,' including the positions it takes in collective bargaining." 138 S. Ct. at 2461. Mark Janus' Second Amended Complaint was sufficient to confer standing on the Supreme Court although it did not elaborate on all of the particular grievances that Mr. Janus had with his union. *See* Second Amended Complaint, ¶ 42-44, *Janus*, No. 15-cv-1235, ECF No. 145 (N.D. Ill. July 21, 2016) (Available at https://ljc-assets.s3.amazonaws.com/2016/12/Rauner-v.-AFSCME-145-Second-Amended-Complaint-2016.07.21.pdf) ("Janus objects to many of the public policy positions that AFSCME advocates, including the positions that AFSCME advocates for in collective bargaining. . . . For example, he does not agree with what he views as the union's one-sided politicking for only its point of view. Janus also believes that AFSCME's behavior in bargaining does not appreciate the current fiscal crises in Illinois and does not reflect his best interests or the interests of Illinois citizens. . . . But for Illinois law requiring compulsory fees, Janus would not pay any fees or otherwise subsidize AFSCME.").

Plaintiffs' allegations in the Complaint are likewise sufficient to support the existence of Article III standing in this case. Unlike AHEM, the United States Supreme Court calls the injury Plaintiffs have asserted "direct and immediate." *Doremus*, 342 U.S. at 433-34. Under all applicable Supreme Court precedent, Plaintiffs have standing to assert their federal claims.

### B. **AHEM's Cited Case Law Does Not Advance Its Argument.**

AHEM's cited case law is not to the contrary—its cited cases are simply inapposite to the specific context of this lawsuit. AHEM picks and chooses misleading quotes from cases dealing with federal and state taxpayer suits to support its specious argument. AHEM cites several cases, including *Flast*, *Allen v. Wright*, *Schlesinger v. Reservists Comm. to Stop the War*, *Valley Forge*, and *United States v. SCRAP* for the same premise, which boils down to that federal courts are not the appropriate place "in which to air . . . generalized grievances about the conduct of government." ECF No. 14 at 5.

However, none of these cases deals with local taxpayer suits, none overrules *Doremus*, and thus none applies to this action. In fact, each deals with the use of only federal tax dollars or federal power. *Flast*, 392 U.S. at 85 ("the appellants were resting their standing to maintain the action solely on their status as federal taxpayers") (cited in ECF No. 14 at 5); *Allen v. Wright*, 468 U.S. 737, 739-40 (1984) ("Parents of black public school children allege in this nation-wide class action that the Internal Revenue Service (IRS) has not adopted sufficient standards and procedures to fulfill its obligation to deny tax-exempt status to racially discriminatory private schools.") (cited in ECF No. 14 at 5, 7, 8); *Schlesinger*, 418 U.S. 208, 214 (1974) ("Petitioners present three questions for review: (1)

whether respondents have standing, 'either as citizens or as federal taxpayers,' to bring this claim . . . .") (cited in ECF No. 14 at 5-6, 7); *Valley Forge*, 454 U.S. at 468-69 ("The [federal] Department of Health, Education, and Welfare (HEW) eventually assumed responsibility for disposing of portions of the property, and in August 1976, it conveyed a 77-acre tract to petitioner, the Valley Forge Christian College . . . The complaint asserted that each member "would be deprived of the fair and constitutional use of his (her) tax dollar for constitutional purposes in violation of his (her) rights under the First Amendment of the United States Constitution.") (cited in ECF No. 14 at 7, 8); *SCRAP*, 412 U.S. 669, 678 (1973) ("SCRAP filed the present suit against the United States and the Commission in the District Court for the District of Columbia seeking, along with other relief, a preliminary injunction to restrain enforcement of the Commission's February 1 and April 24 orders allowing the railroads to collect the 2.5% surcharge.") (cited in ECF No. 14 at 8). There is not much more to say about each; they simply don't apply here.

AHEM also cites one case related to state taxpayer standing in the Eighth Circuit, *Tarsney v. O'Keefe*, 225 F.3d 929 (8th Cir. 2000). Again, *Tarsney* relates to *state*, not *local* spending. *Id.* at 933. The two are not analyzed the same way under the test for whether a taxpayer can assert an Article III injury. *Doremus*, 342 U.S. at 433-34 (distinguishing municipal taxpayer claims as unlike state and federal law challenges).

And even if Plaintiffs were only suing on the basis of a misallocation of state funds—which they are not—Plaintiffs' lawsuit falls within the ambit of *Flast*, *Everson*, and *Doremus* as they relate to state taxpayer standing. AHEM argues that Plaintiffs do not qualify for *Flast* taxpayer standing because they do not allege an Establishment Clause

10

claim. ECF No. 14 at 10 n.2. But AHEM misstates the holding of *Flast*. *Flast* specifically held that "standing requirements will vary in First Amendment religion cases depending on whether the party raises an Establishment Clause claim or a claim under the Free Exercise Clause." 392 U.S. 83, 102 (1968). *Flast* is not limited to the Establishment Clause context.

Consistently, *Everson* and *Doremus* outright support the finding of standing to sue in this lawsuit as a state taxpayer. In *Everson*, as noted above, the plaintiffs sued to enjoin a state law as district and state taxpayers. 330 U.S. at 3. The Court allowed them to do so. *Id.* Later, in *Doremus*, the Court held that the reason the *Everson* Court allowed this was because "Everson showed a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." *Doremus*, 342 U.S. at 434. That is exactly what Plaintiffs have done here. They have alleged (1) AHEM members take leave from ISD 11 for political advocacy, up to 100 days per school year, Compl. ¶ 36; (2) ISD 11 pays teacher salaries and benefits in full, Compl. ¶ 44; (3) AHEM only reimburses a portion of the salary paid, *id.*; and (4) this is accomplished with Plaintiffs' local and state tax dollars, Compl. ¶¶ 8, 13-15, 27. ISD 11 admits these facts in their Answer, so they are not even just allegations—they are established facts before the Court. Answer of ISD 11, ECF No. 17, ¶¶ 2, 8-17.

Whether viewed through the lens of local taxpayer standing or state taxpayer standing, Plaintiffs' allegations in the Complaint, which must be accepted as true here, demonstrate a "direct and immediate" injury over which this Court has jurisdiction and can redress.

### III. PLAINTIFFS WILL PREVAIL ON THEIR FEDERAL CLAIMS.

As Plaintiffs argued in their motion for a preliminary injunction, they should prevail on the merits of the federal claims here. ECF No. 21 at 7-10. Plaintiffs incorporate those arguments here and address AHEM's specific arguments made in its motion.

#### A. This Is Not a Government Speech Case.

AHEM categorically claims that "the First Amendment quite simply does not make the government's ability to subsidize private parties' First Amendment expressive activities dependent on whether one or more taxpayers may find the subsidy objectionable." ECF No. 14 at 11 (citing *Buckley v. Valeo*, 424 U.S. 1, 91-93 & n.127 (1976)). The Supreme Court disagrees:

> We have sustained First Amendment challenges to allegedly compelled expression in two categories of cases: true "compelled-speech" cases, in which an individual is obliged personally to express a message he disagrees with, imposed by the government; and "compelled-subsidy" cases, in which an individual is required by the government to subsidize a message he disagrees with, expressed by a private entity.

*Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005).

AHEM's reference to *Buckley*, ECF No. 14 at 12-13, is therefore inapposite because it does not stand for the categorical rule that AHEM claims to be the law.

Further, as with AHEM's standing argument above, *Buckley* involved a federal taxpayer suit over the payment of federal funds to politicians campaigning for office under the Federal Election Campaign Act. 424 U.S. 1, 14 (1976). *Buckley* is thus far afield from the subject matter of this case. In contrast, this case deals with the forced subsidy of a public-sector union using local and state tax dollars. This qualitative difference makes this

case distinct from *Buckley* but like the type of illegal subsidy described in the portion of *Johanns* quoted above and its related precedent—such as *Abood v. Detroit Board of Education*, 431 U.S. 209, 235-36 (1977), *overruled on other grounds by Janus*, 138 S. Ct. 2448 (2018). Plaintiffs do not quarrel with *Buckley*'s footnote 127. But just because *some* private expression may be subsidized by government funds does not mean that *this* private expression may be subsidized consistent with the First Amendment.

Similar to its initial claim of a categorical rule, AHEM next claims that the rule to apply is that "[g]overnment subsidies like the one challenged in *Buckley* are in line with the First Amendment because they do not place any *restraints* on expression." ECF No. 14 at 12. Again, this is not the rule. The Supreme Court just ten years ago invalidated an Arizona forced subsidy that put no restraint whatsoever on how much money or speech a political candidate engaged in. *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 754 (2011) ("Arizona's program gives money to a candidate in direct response to the campaign speech of an opposing candidate or an independent group."); *see also* 564 U.S. at 763 (2011) (Kagan, J., dissenting) ("There is just one problem. Arizona's matching funds provision does not restrict, but instead subsidizes, speech."). And the Supreme Court has struck down laws that result in compelled subsidy of private speech, with no other restraint on the plaintiffs' speech. *United States v. United Foods, Inc.*, 533 U.S. 405, 413 (2001) ("mandated support is contrary to the First Amendment principles set forth in cases involving expression by groups which include persons who object to the speech, but who, nevertheless, must remain members of the group by law or necessity. See, *e.g., Abood* . . . ."). As AHEM well knows, *Janus* itself struck down a forced subsidy

13

by non-members of public sector unions, when those employees were perfectly free to say whatever they wanted about their union without restraint. AHEM simply misstates the applicable law.

There is, however, a type of subsidy that is *not* actionable under the First Amendment: "government speech," which the *Johanns* Court eventually held was the speech at issue there. 544 U.S. at 559, 562. Without actually invoking the name of the doctrine, AHEM also appears to indirectly argue that the subsidy at issue is an act of government speech. *See* ECF No. 14 at 12-13 (collecting government speech cases). However, AHEM's political advocacy using Plaintiffs' local taxpayer dollars is not "government speech" under the government speech doctrine.

The government speech doctrine holds that "[t]he government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties." *Johanns*, 544 U.S. at 559. But Plaintiffs have never heard of "government speech" with which the only "government" in the case disagrees. ISD 11, the only government actor[4] here, has expressly alleged in their Answer that they believe Article IV, Section 13 of the CBA is illegal, and they invited this Court to enter judgment in Plaintiffs' favor on state law grounds. Answer of ISD 11, ECF No. 17, ¶ 18, p. 5 ¶ B.

Additionally, public sector labor unions are unquestionably private groups in terms of their speech vis-à-vis the government speech doctrine.[5] *Abood v. Detroit Board of Education*, 431 U.S. 209, 235-36 (1977), *overruled on other grounds by Janus*, 138 S. Ct.

---

[4] While AHEM operates under color of state law, it is not the government.
[5] Again, this is despite the fact that public sector unions operate under color of state law.

2448 (2018); *id.* at 259 n.13 (Powell, J., concurring) ("Compelled support of a private association is fundamentally different from compelled support of government. Clearly, a local school board does not need to demonstrate a compelling state interest every time it spends a taxpayer's money in ways the taxpayer finds abhorrent. But the reason for permitting the government to compel the payment of taxes and to spend money on controversial projects is that the government is representative of the people. The same cannot be said of a union, which is representative only of one segment of the population, with certain common interests. The withholding of financial support is fully protected as speech in this context."); *Johanns*, 544 U.S. at 558 ("Deciding the case on the assumption that the advertising was private speech, not government speech . . . we concluded that *Abood* and *Keller* were controlling."); *United States v. United Foods, Inc.*, 533 U.S. 405, 413 (2001) ("mandated support is contrary to the First Amendment principles set forth in cases involving expression by groups which include persons who object to the speech, but who, nevertheless, must remain members of the group by law or necessity. See, *e.g., Abood* . . . .").

The forced subsidy of AHEM's speech at issue in this case is in no way "government speech" pursuant to the Supreme Court's government speech doctrine.

### B. The CBA Violates the First Amendment.

The type of forced subsidy that *is* actionable under the First Amendment is the type the Court faces here, which *Johanns* and its related cases recognized: forced subsidy by Plaintiffs of private speech with which they disagree, in this case using Plaintiffs' local tax dollars. Contrary to AHEM's broad-brush arguments, this case occupies a relatively narrow

15

space in the First Amendment framework, and as AHEM predicted Plaintiffs would say, *Janus* holds at least part of the key.

The *Johanns* and *United Foods* Courts notably relied on *Abood* as a prime example of the type of forced subsidy that is actionable under the First Amendment. *Johanns*, 544 U.S. at 558; *United Foods*, 533 U.S. at 413. *Abood* dealt with public sector unions, which is the context we are in here. The specific context of *Abood* was forced subsidies by public sector employees: "the Constitution requires only that such expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment." 431 U.S. at 235-36.

> *Abood*, however,
>
> failed to appreciate the difference between the core union speech involuntarily subsidized by dissenting public-sector employees and the core union speech involuntarily funded by their counterparts in the private sector. In the public sector, core issues such as wages, pensions, and benefits are important political issues, but that is generally not so in the private sector. In the years since *Abood,* as state and local expenditures on employee wages and benefits have mushroomed, the importance of the difference between bargaining in the public and private sectors has been driven home.

*Harris v. Quinn*, 573 U.S. 616, 636 (2014). *Harris* did not have occasion to directly overrule *Abood*, but *Janus* did, and went much further. *Janus* held that

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed.

*Janus*, 138 S. Ct. at 2486. This is because *all* public sector union speech, and not just their

political advocacy, is political—it "is overwhelmingly of substantial public concern." *Id.* at 2477.

Despite AHEM's protest that *Janus* only involved public sector union *employees*, as Plaintiffs noted in their memorandum supporting a preliminary injunction here, the Eighth Circuit has not limited the application of *Janus* only to the public sector employee context. ECF No. 21 at 8; *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752, 758 (8th Cir. 2019) (citing *Janus*). Rather, the Eighth Circuit applied the compelled speech principles of *Janus* to strike down the application of the Minnesota Human Rights Act to videographers whom Minnesota sought to force to produce videos of same-sex marriages. *Telescope Media*, 936 F.3d at 758. And, the Northern District of Illinois recently only dismissed a First Amendment municipal taxpayer compelled speech challenge based on *Janus* because the speech at issue was, in fact, speech by a municipal government and a municipal government league made up of only municipal governments. *See O'Brien*, 354 F. Supp. 3d at 917-19, *aff'd*, 955 F.3d 616 (7th Cir. 2020). Thus, the government speech doctrine applied there. *Id.* In contrast, there is no government-speech impediment to Plaintiffs here.

*Janus*' right against compelled speech by public sector unions is thus broader than AHEM claims. And given that AHEM's political advocacy is not government speech, and is paid for by Plaintiffs' local tax dollars, it falls under the Supreme Court's compelled subsidy jurisprudence and is subject to First Amendment scrutiny.

*Janus* left open whether strict or exacting scrutiny applies in compelled speech situations like the one it faced. 138 S. Ct at 2465. Plaintiffs believe strict scrutiny should be applied. But even under the First Amendment's "exacting scrutiny," the business leave

17

provision of the CBA stands no chance. To survive exacting scrutiny, AHEM must show that the business leave provision serves a "compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465 (quoting *Knox v. Serv. Employees*, 567 U.S. 298, 310 (2012)).

First, the AHEM leave provision of the CBA does not serve any state interest. As Plaintiffs assert in more detail in their memorandum of law supporting a preliminary injunction, the business leave provision violates Minnesota law. ECF No. 21 at 10-17. ISD 11 agrees that the challenged provision is illegal and wants it ended. Answer of ISD 11, ECF No. 17 ¶¶ 17-18. A challenged action that violates state law—and which the only government in this action disagrees with—cannot serve a state interest.

Further, AHEM can achieve what it wants through a means that impinges less on Plaintiffs' First Amendment rights. AHEM can fully reimburse ISD 11 for the cost of the teacher salaries and benefits that ISD 11 pays when teachers take leave to do AHEM business and political advocacy. Minnesota law expressly provides that union business leave may be taken if it is unpaid. Minn. Stat. § 179A.07, Subd. 6.[6]

The First Amendment does not allow a compelled local taxpayer subsidy of a public sector union's speech. Therefore, the Court should deny AHEM's motion to dismiss.

### C. The CBA Violates the Constitutional Public Purpose Doctrine.

Finally, Plaintiffs note that AHEM does not quite encapsulate Plaintiffs' federal

---

[6] While the constitutionality of that statute has yet to be determined, it is not at issue here, and the point is that AHEM could tailor its actions to avoid the specific "pocketbook harm" alleged in the Complaint here.

claims in this case. AHEM claims that Plaintiffs are only arguing that the CBA's AHEM leave provision is a subsidy that violates the First Amendment. ECF No. 14 at 10. But Plaintiffs also argue that the illegal subsidy of AHEM political advocacy violates the Supreme Court's constitutional public purpose doctrine under *Citizens' Savings & Loan Association v. City of Topeka*, 87 U.S. 655, 661 (1874). So, Plaintiffs' federal claims include both theories of relief.[7] Plaintiffs incorporate their argument that the subsidy at issue violates the public purpose doctrine from their other memorandum supporting a preliminary injunction. ECF No. 21 at 8-10, 13-17.

## IV. THE COURT SHOULD EXERCISE SUPPLEMENTARY JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS.

As argued in Plaintiffs' other memorandum of law supporting a preliminary injunction, whether the Court agrees with Plaintiffs or not, it should exercise its discretion to keep jurisdiction over the state law claims. ECF No. 21 at 10. The Court has discretion to retain state law claims even if the federal claims in a case have been dismissed. 28 U.S.C. § 1367(c). Plaintiffs expect that regardless of how the Court rules here, there will be an appeal to the Eighth Circuit from a final judgment in this case related to the federal claims, so as a matter of judicial economy, it would make sense to adjudicate this case in this forum.

---

[7] To the extent AHEM attempts to argue that the constitutional public purpose doctrine is not expressly alleged in the Complaint, Plaintiffs allege that subsidizing AHEM's political advocacy has no public purpose. Compl. ¶ 30. And, this Court must allow Plaintiffs to pursue any legal theories that could be supported by the facts of the Complaint, even if there is an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

## CONCLUSION

Contrary to Defendant AHEM's arguments, Plaintiffs have standing to sue in federal court, and they have a First Amendment right to not subsidize AHEM's private political advocacy. The CBA between ISD 11 and AHEM violates the First Amendment and Minnesota law, and the Court should deny AHEM's motion to dismiss.

**UPPER MIDWEST LAW CENTER**

Dated: February 26, 2021

　/s/ *James V. F. Dickey*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
8421 Wayzata Blvd., Suite 105
Golden Valley, Minnesota 55426
doug.seaton@umwlc.org
james.dickey@umwlc.org
(612) 428-7000

*Attorney for Plaintiffs*