# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DON HUIZENGA, NANCY POWELL, and JIM BENDTSEN,<br><br>Plaintiffs,<br><br>v.<br><br>INDEPENDENT SCHOOL DISTRICT NO. 11, and ANOKA-HENNEPIN EDUCATION MINNESOTA (AMERICAN FEDERATION OF TEACHERS LOCAL 7007),<br><br>Defendants. | Case No. 20-CV-2445 (NEB/ECW)<br><br>ORDER ON MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION |

Plaintiffs, who are state and county taxpayers, sued a school district and a union to challenge a provision of the collective bargaining agreement between the two. The CBA at issue allows teachers in the school district to take paid leave to conduct business for the teachers' union. Plaintiffs allege that this provision of the CBA violates the First Amendment. Plaintiffs move for a preliminary injunction, the union moves to dismiss the complaint, and the school district takes no position. Because Plaintiffs lack standing to sue, the Court grants the motion to dismiss and denies the motion for preliminary injunction.

## BACKGROUND

Plaintiffs are taxpayers and residents of Anoka County, Minnesota. (ECF No. 1 ("Compl.") ¶¶ 13–15.) They pay taxes both to the State and to Anoka County. A portion of those taxes are allocated to Defendant Independent School District No. 11 ("School District."). (*Id.* ¶¶ 14–15, 27.) The School District—an "arm of the state"—"receives about 70% of its budget money from state revenue, 21% of its budget money from property taxes paid by district residents," and the remaining funds from other sources. (*Id.* ¶¶ 27, 65; *see id.* ¶¶ 26, 65 (alleging that the Union and the School District are "state actors").)

Plaintiffs challenge portions of the collective bargaining agreement between the School District and the Defendant teachers' union, Anoka-Hennepin Education Minnesota (American Federal of Teachers Local 7007) ("Union"). Under the CBA, teachers can work for the Union for 100 days per year (collectively), and the Union must reimburse the School District "for required substitute cost." (*Id.* ¶¶ 36; *see* ECF No. 18 ("CBA") art. IV, § 13.) Thus, when teachers take leave to do union business, the School District pays the teachers' full salaries and benefits, and the Union reimburses the School District for a lower amount—at most, a rate for substitute teachers. (Compl. ¶¶ 42, 44.) Not surprisingly, this lawsuit came about because the Union uses the teachers to engage in advocacy that Plaintiffs do not support. (*Id.* ¶¶ 43, 44, 46; *see* ECF Nos. 22–24 ¶ 4 (Plaintiffs' declarations that they "largely disagree with [the Union's] political advocacy").)

Plaintiffs have no connection to the school other than their status as taxpayers, so they use taxpayer standing as a basis for suit under the United States Constitution, the Minnesota Constitution, and the Minnesota Public Employees Labor Relations Act ("PELRA"), Minn. Stat. § 179A.01 *et seq.* (Compl. ¶¶ 48–63.) The claim under the United States Constitution is a First Amendment claim, alleging that "[n]either an agency fee nor any other payment to [a public sector] union may be deducted from a nonmember's wages . . . unless the employee affirmatively consents to pay."[1] (*Id.* ¶¶ 64–68 (citing *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018)).) Plaintiffs ask the Court to "enjoin the Union from removing teachers from their work for the School District to work for the Union absent full payment for their wages and benefits for each day teachers work for the Union." (*Id.* ¶ 56 (cleaned up); *see id.* ¶ 63 (similar).) They also seek to compel the Union to compensate the School District for the unpaid or underpaid business leave taken by teachers over the past six years. (*Id.* at 12.)

## ANALYSIS

### I. Standing

This case presents the oft-litigated conundrum of taxpayer standing: Plaintiffs claim that they have standing to sue because they pay taxes to the State of Minnesota and

---

[1] Plaintiffs have withdrawn their argument that subsidizing the Union's political advocacy is unconstitutional because it has no public purpose under *Citizens' Savings and Loan Association v. City of Topeka*, 87 U.S. 655 (1874). (ECF No. 35 at 11.)

Anoka County, and the School District receives taxpayer funds from those entities.[2] (Compl. ¶¶ 13–15, 27; ECF No. 29 at 2.) Plaintiffs understand that they face the general rule that "[a]bsent special circumstances . . . standing cannot be based on a plaintiff's mere status as a taxpayer." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011). But there are exceptions granting taxpayer standing in limited circumstances. Because Plaintiffs contend that the School District receives funds from state and county taxpayers, the Court considers these exceptions in two contexts—state and municipal.

### A. *State Taxpayer Standing*

The Complaint alleges that Plaintiffs are state taxpayers, and that the School District, as an "arm of the state," receives state funds. (Compl. ¶¶ 13–15, 26–27); *see GME Consultants, Inc. v. Oak Grove Dev., Inc.*, 515 N.W.2d 74, 76 (Minn. Ct. App. 1994) (holding that school districts are "arms of the state"); *Vill. of Blaine v. Indep. Sch. Dist. No. 12, Anoka Cnty.*, 138 N.W.2d 32, 38 (Minn. 1965) (same). "[S]tate taxpayers have no standing under

---

[2] The Union moves to dismiss the Complaint because Plaintiffs lack standing and fail to plead a federal claim on which relief can be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6). The Court considers standing first because it is jurisdictional. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) (beginning with standing because courts are obliged to assure themselves of a litigant's Article III standing). The Union challenges the Complaint on its face, so the factual allegations concerning jurisdiction "are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). The Court "restricts itself to the face of the pleadings," and Plaintiffs receive "the same protections as [they] would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The parties do not dispute that the Court may consider the CBA, which is embraced by the Complaint. *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 850 (8th Cir. 2020).

4

Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *DaimlerChrysler*, 547 U.S. at 346. Plaintiffs insist that their claims are not based solely on a misallocation of state funds, but even if they were, they fall within the exception created in *Flast v. Cohen*, 392 U.S. 83 (1968). (ECF No. 29 at 9–11.) The Court disagrees.

Under *Flast*, a plaintiff asserting a First Amendment claim has standing to challenge a law authorizing the use of federal funds in a way that allegedly violates the Establishment Clause. 392 U.S. at 105–06. This exception also applies to state taxpayer challenges of state expenditures contrary to the Establishment Clause. *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 420 (8th Cir. 2007); *see generally Doremus v. Bd. of Educ.*, 342 U.S. 429, 434 (1952) ("[W]hat the Court said of a federal statute [i]s equally true when a state Act is assailed: 'The [taxpayer] must be able to show . . . that he has sustained . . . some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally.'").

Plaintiffs argue that *Flast* is not limited to the Establishment Clause context; they seek to apply *Flast* to their First Amendment freedom-of-speech challenge. (ECF No. 29 at 11). But the Supreme Court has characterized *Flast* as "a narrow exception to the general constitutional prohibition against taxpayer standing." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 602 (2007); *see DaimlerChrysler*, 547 U.S. at 347, 349 (noting that only the Establishment Clause has supported federal taxpayer suits since

5

*Flast*, and rejecting state taxpayer standing based on a Commerce Clause challenge); *Booth v. Hvass*, 302 F.3d 849, 852 (8th Cir. 2002) (noting the Supreme Court "has never found any other constitutional provision that satisfies *Flast*"). The Eighth Circuit and other federal appellate courts "have followed the Supreme Court's lead in refusing to expand the exception adopted in *Flast*." *Tarsney v. O'Keefe*, 225 F.3d 929, 937–38 (8th Cir. 2000) (finding no Free Exercise Clause injury arises from a government expenditure until the expenditure directly prevents the taxpayer's free exercise of religion) (citations omitted). As the Supreme Court explained in *DaimlerChrysler*, "a broad application of *Flast's* exception to the general prohibition on taxpayer standing would be quite at odds with its narrow application in [Supreme Court] precedent and *Flast's* own promise that it would not transform federal courts into forums for taxpayers' 'generalized grievances.'" 547 U.S. at 348 (quoting *Flast*, 392 U.S. at 106). Thus, this Court declines to expand the *Flast* exception to this case, and concludes Plaintiffs lack state taxpayer standing.[3]

---

[3] Plaintiffs also rely on *McKee v. Likins*, 261 N.W.2d 566 (Minn. 1977), insisting that Minnesota state courts allow taxpayer suits based on illegal expenditures of state tax dollars. (ECF No. 29 at 6 n.2.) But as the Minnesota Supreme Court aptly noted, courts use "different tests for taxpayers' suits on the Federal and state level." *McKee*, 261 N.W.2d at 570 n.4. Thus, a case about Minnesota's standing requirement holds no sway here.

### B. *Municipal Taxpayer Standing*

Plaintiffs' challenge as municipal taxpayers fares no better.[4] The Supreme Court has recognized municipal taxpayer standing "to enjoin the 'illegal use of the moneys of a municipal corporation.'"[5] *DaimlerChrysler*, 547 U.S. at 349 (quoting *Frothingham v. Mellon*, 262 U.S. 447, 486, 487 (1923).) The Eighth Circuit has also recognized the doctrine in concept, but has never applied it to find standing. *See Booth*, 302 F.3d at 853 (acknowledging *Frothingham* and *Crampton v. Zabriskie*, 101 U.S. 601 (1879)); *see, e.g.*, *Pulido v. Bennett*, 848 F.2d 880, 886 (8th Cir.), *modified*, 860 F.2d 296 (8th Cir. 1988) (declining to find local taxpayer standing where plaintiffs could not show their complaint

---

[4] "[O]ne of the central premises of municipal taxpayer standing is that the taxpayer's suit be brought against a *municipality*." *Bd. of Educ. v. N.Y. State Tchrs. Ret. Sys.*, 60 F.3d 106, 111 (2d Cir. 1995) (emphasis in original). According to Plaintiffs, the School District constitutes a municipality for taxpayer standing because a Minnesota statute defines school districts as "municipalities" for tort liability. (ECF No. 35 at 3); Minn. Stat. § 466.01, subdiv. 1; *United States v. Minn. Transitions Charter Sch.*, 50 F. Supp. 3d 1106, 1117 (D. Minn. 2014). At the hearing, the Union disputed this characterization of Minnesota law and its application to taxpayer standing. The Court need not resolve this issue because even if the School District is a municipality for taxpayer standing purposes, Plaintiffs do not satisfy the requirements for municipality taxpayer standing.

[5] Even after *DaimlerChrysler*, some Circuits have questioned the viability of municipal taxpayer standing. *See, e.g.*, *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 733 (7th Cir. 2020) (Barrett, J.) ("Municipal taxpayer standing is a bit of a relic in the modern landscape of standing. . . . The rule remains undisturbed, but it has grown increasingly anomalous."); *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 23 n.4 (6th Cir. 2020) ("We question the viability of municipal taxpayer standing but recognize we must apply it today."); *see also Feldman v. Bowser*, 315 F. Supp. 3d 299, 312 n.5 (D.D.C. 2018) ("[T]he tide appears to be turning against the recognition of municipal taxpayer standing.").

was a "'good-faith pocketbook action' to redress 'a direct dollars-and-cents injury'" they suffered as local taxpayers) (quoting *Doremus*, 342 U.S. at 434).

Courts describing the doctrine countenance two requirements: (1) "the plaintiff must actually be a taxpayer of the municipality that she wishes to sue"; and (2) "the plaintiff must establish that the municipality has spent tax revenues on the allegedly illegal action." *Protect Our Parks, Inc.*, 971 F.3d at 734 (citation omitted). As to the first requirement, Plaintiffs assert that they have municipal taxpayer standing because they pay taxes to Anoka County, which partially funds the School District. (ECF No. 29 at 5–11; Compl. ¶¶ 13–15, 27.) The question is whether Plaintiffs' tax payments to Anoka County give them standing to sue the School District.

In *Frothingham*, the Supreme Court explained that municipal taxpayer standing stems from "the peculiar relation of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation." 262 U.S. at 487. Given this analogy, plaintiffs can only use their municipal taxpayer status to sue the municipal entities to which they paid taxes.

Plaintiffs—who bear the burden of proving standing—cite no instances of municipal taxpayer standing where the taxpayers did not pay taxes directly to the municipal defendant. Indeed, courts have declined to find municipal taxpayer standing in this scenario. *See, e.g.*, *Four Seasons Marina Rentals, Inc. v. City of Osage Beach*, No. 08-4221-CV-C-NKL, 2009 WL 1543766, at *4 (W.D. Mo. June 3, 2009) (finding no standing

8

where plaintiff sued a municipality in which it did not reside and to whom it did not pay taxes, but whose legislative action would reduce the amount of taxpayer money available to its own municipality); *Lee v. Kan. City Mo. Sch. Dist.*, No. 07-0487-CV-W-FJG, 2008 WL 539276, at *2 (W.D. Mo. Feb. 26, 2008) (finding no standing to sue municipality other than the one to which plaintiff paid taxes); *Futia v. Westchester Cnty. Bd. of Legislators*, No. 20 CV 1237 (VB), 2020 WL 4570494, at *5 (S.D.N.Y. Aug. 6, 2020) (finding no municipal taxpayer standing where "plaintiffs are not Town residents, and do not plausibly allege a 'direct and immediate' relationship with the municipality"), *aff'd*, No. 20-2946-CV, 2021 WL 1558299 (2d Cir. Apr. 21, 2021).

Plaintiffs rely on *O'Brien v. Village of Lincolnshire* as an example of municipal taxpayer standing. 354 F. Supp. 3d 911 (N.D. Ill. 2018), *aff'd*, 955 F.3d 616 (7th Cir. 2020) ("*O'Brien II*"); (ECF No. 29 at 7.) In *O'Brien*, the plaintiffs alleged that they paid taxes to the Village of Lincolnshire, which Lincolnshire then used to pay membership dues to co-defendant IML. *See id.* at 913–14. The plaintiffs objected to Lincolnshire paying dues to IML because IML used the dues to fund allegedly impermissible political activities. *Id*. at 914. The plaintiffs claimed that "Lincolnshire compelled them to subsidize private speech on matters of substantial public concern," and sought an injunction preventing Lincolnshire from using tax revenue to fund IML's private speech. *O'Brien II*, 955 F.3d at 621. Although not specifically addressed in *O'Brien*, the plaintiffs there sued the proper municipality—the one to whom they paid taxes.

9

Plaintiffs did not sue a municipality with which they have the "peculiar relation of corporate taxpayer to corporation," *i.e.*, Anoka County. *Frothingham*, 262 U.S. at 487. They sued the School District, an entity independent of Anoka County.[6] Plaintiffs do not claim that they pay taxes directly to the School District; they allege that they paid taxes to the State and to Anoka County, and that Anoka County funds some of the School District's budget.[7] (Compl. ¶¶ 13–15, 27 (21% of funding from Anoka County).)

---

[6] The School District is "an independent district" governed by Minnesota Statute Chapter 123B. (Compl. ¶ 16 (citing Minn. Stat. § 123A.55)); Minn. Stat. ch. 123B (School District Powers and Duties); *see* Minn. Stat. § 120A.05, subdiv. 10 (defining "independent district" as "any school district validly created and existing as an independent, consolidated, joint independent, county or a ten or more township district"). Anoka County is governed by Minnesota Statute Chapter 383E.

[7] *Everson v. Board of Education* seems, at first blush, to support Plaintiffs' position. 330 U.S. 1 (1947). In *Everson*, a "district taxpayer" sued a township's board of education, challenging a board resolution to reimburse parents of students for bussing to and from parochial schools on constitutional grounds. *Id.* at 3. The Supreme Court considered the merits of the taxpayer's challenge, implicitly concluding he had standing to sue. The Supreme Court later explained that the *Everson* taxpayer had standing because he showed "a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of"—an issue relevant to the second requirement for municipal taxpayer standing. *Doremus*, 342 U.S. at 434–35 (finding no taxpayer standing to assert an Establishment Clause challenge because the taxpayer failed to show a "good-faith pocketbook" injury). Although neither *Everson* nor *Doremus* addressed whether the "district taxpayer" sued a municipal entity that had levied the taxes at issue, a related state court opinion suggests that he did. The state court in *Everson* explained that the New Jersey legislature had "delegate[d] taxing powers to local school districts to raise funds for local school purposes." *Everson v. Bd. of Educ.*, 44 A.2d 333, 336 (N.J. 1945), *aff'd*, 330 U.S. 1 (1947); *see id.* ("School districts, such as the appellant, are authorized by R.S. 18:7–78, N.J.S.A., to raise by special district taxes funds to defray certain current charges and expenses of the public schools in their districts."); *see also Doremus v. Bd. of Educ.*, 75 A.2d 880, 881 (N.J. 1950) (noting that New Jersey public schools were supported "in part by funds raised exclusively in the school district by levy upon taxable property within the

10

Allowing Plaintiffs to sue the School District just because it received some funds from the municipality to which they paid taxes would expand municipal taxpayer standing beyond the narrow limits set by *Frothingham*. *Cf. N.Y. State Tchrs. Ret. Sys.*, 60 F.3d at 111 (declining to extend municipal taxpayer standing to actions where a taxpayer challenges an expenditure of municipal funds mandated by state law because "such a rule is not supported by the cases establishing taxpayer standing"). Because Plaintiffs did not pay municipal taxes to the School District, they do not have municipal taxpayer standing to sue in federal court.[8]

**II.    Remaining Motions**

Having concluded that Plaintiffs lack Article III standing, the Court is without subject matter jurisdiction to determine whether their First Amendment claim states a plausible claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the same reason, the Court must deny Plaintiffs' motion for preliminary injunction as moot and dismiss this case.

---

school district."). Because the *Everson* taxpayer sued the school district that levied the taxes at issue, *Everson* does not contravene the proposition that municipal taxpayers only have standing to sue the municipal entities to which he paid taxes.

[8] The Union also argues that Plaintiffs do not have municipal taxpayer standing because they identify no unlawful appropriation of taxpayer funds. Because the Court finds that Plaintiffs do not have municipal taxpayer standing for other reasons, it does not reach this argument.

11

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Anoka-Hennepin Education Minnesota's Motion to Dismiss Plaintiffs' Complaint (ECF No. 12) is GRANTED;

2. Plaintiffs' Motion for Preliminary Injunction (ECF No. 19) is DENIED AS MOOT; and

3. Plaintiffs' Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 18, 2021						BY THE COURT:

								s/Nancy E. Brasel
								Nancy E. Brasel
								United States District Judge